**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Martin Marion SNEED, Jr.,
Defendant-Appellant.**

No. 82–2088.

United States Court of Appeals,
Fifth Circuit.

May 23, 1983.

Stephen M. Rienstra, Port Arthur, Tex., for defendant-appellant.

Robert J. Wortham, U.S. Atty., Tyler, Tex., Carolyn Gaines, Dept. of Justice, Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In an earlier appeal, we reversed Martin Sneed, Jr.'s conviction for possessing marijuana with intent to distribute it [1] because of errors in the jury selection at his trial.[2] We declined to address his alternative claim that the evidence was insufficient to sustain the jury's verdict. The case is again before us on his interlocutory appeal from the trial court's refusal to halt a pending retrial as barred by the fifth amendment's double jeopardy clause. We conclude that we have jurisdiction to hear the appeal and, because the evidence against Sneed was insufficient, we reverse.

## I.

In *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court held that pretrial orders rejecting claims of former jeopardy constitute appealable final decisions under the

---

1. *See* 21 U.S.C. § 841(a) (1976).

2. *United States v. Hawkins,* 658 F.2d 279 (5th Cir.1981).

collateral-order doctrine because they finally resolve the claimed defense and are collateral to, and separable from, the ultimate issue of guilt. *Id.* at 662–63, 97 S.Ct. at 2042, 52 L.Ed.2d at 662.[3] Notwithstanding *Abney,* the government suggests that two of our recent decisions require a finding that Sneed's appeal is premature.

In the first, *United States v. Becton,* 632 F.2d 1294 (5th Cir.1980), *cert. denied,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981), the trial judge granted a mistrial because the jury failed to agree. We refused to hear an *Abney* appeal from the trial court's refusal to block a retrial on double jeopardy grounds. Similarly, in *United States v. Rey,* 641 F.2d 222 (5th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981), the jury returned a guilty verdict but the judge granted a new trial because of "arguably erroneous" jury instructions. 641 F.2d at 223. We refused to hear the appeal from the denial of the defendant's double-jeopardy-based motion to dismiss. *Id.* at 224.

Our premise in both *Becton* and *Rey* was that those appeals did not really present double jeopardy claims. "Although in form the question presented [was] that of a denial of a motion asserting former jeopardy, in reality and substance the appellants [sought] review of their motions to acquit made at the first trial." *Becton,* 632 F.2d at 1296. Once we had characterized the appeals as seeking review of acquittal motions rather than double jeopardy claims, it was clear that *Abney* did not authorize interlocutory review. *Becton,* 632 F.2d at 1296; *Rey,* 641 F.2d at 225–26.[4]

If we disregard the rationale of those two cases and look only at their result, the difference between them and the present case is slight: the difference then could be viewed as turning on whether the sufficiency issue was first decided by the trial court or presented to, and pretermitted by, us. However, the rationale of *Rey* and *Becton* is the reason for their result: in both we considered the appeals efforts to obtain review of the actions taken on motions to acquit made in earlier trials. Sneed is not seeking review of the action on such a motion. He presented that question in his first appeal and obtained no response from us. We could not, and do not, now reconsider our refusal to address the issue. What we must consider is whether our failure to rule on the question previously bars Sneed from making the straightforward double jeopardy claim he now urges: because the evidence was insufficient to sustain a conviction in the first trial, further proceedings against him are barred.

Sneed does not claim that the evidence against him will be insufficient on retrial. He contends, instead, that the evidence at the last trial was insufficient to sustain guilt, and the prosecution should not be given an opportunity in a new trial to adduce the additional evidence that might support a conviction. It is on this basis, he contends, that the earlier proceeding bars his further prosecution. The order appealed from, therefore, "appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."[5]

In *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1, 14 (1978), the Court held that the double jeopardy clause prevents a retrial "once the reviewing court has found the evidence [at

---

**3.** *See also Cohen v. Beneficial Ind. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**4.** The Third Circuit has criticized the reasoning of both cases: "[*Rey* and *Becton* ] failed to recognize the defendants' double jeopardy rights by the simple expedient of recharacterizing the nature of their claims. . . ." *United States v. McQuilkin,* 673 F.2d 681, 686 n. 7 (3d Cir.1982). Two circuits have taken positions consistent with *Becton* and *Rey.* *See United States v. Richardson,* 702 F.2d 1079 (D.C.Cir. 1983); *United States v. Ellis,* 646 F.2d 132 (4th Cir.1981).

**5.** *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26, 93 L.Ed.2d at 1536.

the first trial] legally insufficient. . . ." No court has determined that the evidence at Sneed's first trial was insufficient to sustain a conviction. Nevertheless, if the government did fail to carry its burden at that proceeding, the double jeopardy clause prohibits his retrial.

The Supreme Court recently noted that, when acquittal "was the only proper verdict" in an earlier trial, the double jeopardy clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." [6] If the evidence was insufficient in Sneed's first trial, then acquittal was the only proper verdict. Our refusal to address the sufficiency issue in the first appeal is not a license for the government to "make repeated attempts to convict [Sneed] for [the] alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though he is innocent he may be found guilty." [7] Whether or not the issue is addressed on appeal, "the government must present sufficient evidence the first time to get a second chance." [8]

Other circuits have ruled that the double jeopardy clause bars retrial when there was insufficient evidence at the first trial, notwithstanding the fact that the conviction was reversed on other grounds. Thus, in *United States v. Marolda,* 648 F.2d 623 (9th Cir.1981), the Ninth Circuit considered a case exactly like this one. The defendant had been convicted. On his first appeal, he asserted both trial error and insufficiency of the evidence supporting his conviction. The court of appeals reversed on the trial error but did not address the sufficiency issue. On remand, the defendant moved to dismiss the indictment on double jeopardy

grounds. The motion was denied, and he brought an *Abney* appeal. The court, noting that it was "not a case in which the trial error leading to [the first] reversal may have prejudiced the prosecution," held that double jeopardy barred the defendant's retrial. *Id.* at 624. *Accord United States v. United States Gypsum Co.,* 600 F.2d 414, 416 (3d Cir.) (recognizing principle but finding evidence at first trial sufficient), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979); *see also United States v. Jelsma,* 630 F.2d 778 (10th Cir.1980) (same).

The Eleventh Circuit may differ. In *United States v. Bizzard,* 674 F.2d 1382, 1386 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982), the defendant had been convicted of aggravated bank robbery. His conviction was reversed by the Fifth Circuit because of trial error. *See* 615 F.2d 1080 (5th Cir. 1980). Apparently, he briefed and argued in his first appeal the insufficiency of the evidence to sustain his conviction. *See* 674 F.2d at 1386. However, the Fifth Circuit opinion reversing did not mention his insufficiency claim. 615 F.2d at 1081–82. Indeed, the court expressly noted that, "since we reverse on the issue of trial error, appellant may be retried without any violation of the double jeopardy clause." *Id.* at 1082. Bizzard then urged us to hear his insufficiency claim on rehearing, but we refused. *See* 674 F.2d at 1386. On remand Bizzard was convicted in one of the states that had, by then, become part of the Eleventh Circuit. He appealed to that court, asserting that the double jeopardy clause should have barred his retrial. That court rejected the challenge:

> Since the issue [of insufficiency] was argued in the main brief and specifically asserted on petition for rehearing, however, the panel must have determined

---

**6.** *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (1982) (quoting *Burks,* 437 U.S. at 11, 98 S.Ct. at 2147, 57 L.Ed.2d at 9).

**7.** *Abney v. United States,* 431 U.S. 651, 661–62, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651, 661 (1977).

(quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957)).

**8.** *United States v. Bodey,* 607 F.2d 265, 268 (9th Cir.1979).

there was sufficient evidence to support the verdict in order to remand the case for retrial. We are bound by the prior panel decision.

674 F.2d at 1386. The court went on, however, to note that the evidence had in fact been sufficient in the first trial. *Id.* To the extent that *Bizzard* purports to establish a presumption that, if the issue of insufficiency was raised but not addressed in the first appeal, the panel must have considered and rejected it, we consider the decision incorrect.

We adopt the position of the Third, Ninth, and Tenth Circuits. Sneed's appeal is properly before us under *Abney.* If the evidence at his first trial was legally insufficient to sustain his conviction, the fifth amendment bars his retrial.

## II.

■ Our review is limited to determining whether "there is substantial evidence, taking the view most favorable to the government," to sustain the verdict.[9] "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find guilt beyond a reasonable doubt." [10]

■ Sneed was charged with possessing a controlled substance with intent to distribute it. To convict him, the government was required to prove: "(a) possession, (b) knowledge and (c) intent to distribute." [11] The evidence at trial showed that Sneed's father, Martin Sneed, Sr., was one of the principal actors in a scheme to import a large amount of marijuana. Sneed, Sr. owned land on the Cow Bayou in Orange,

Texas. His home was located on this property. Another house on the land was occupied by one of his sons. The latter house was encircled by a fence.

■ The government's case was largely supported by the testimony of Butler and Washington. They testified that they travelled to Orange to assist in unloading a shrimp boat which was to arrive laden with marijuana. Sneed, Sr. met them and took them to what Washington assumed was Sneed, Sr.'s home.

That day, a number of men, perhaps as many as twenty, assembled at one of the houses on the Sneed property. Butler testified that the group congregated not in Sneed, Sr.'s home but "in the other home, there is two houses there." When asked to whom "the other house belonged," Butler replied "his son lives there or did." The group drank, showered and played pool. Washington took a nap. Butler recalled that Washington, Sneed, Sr., Sneed, Jr., a younger Sneed son and a few others were present. He also indicated that "there was probably a few" conversations about the smuggling operation, but he could not "recollect any personally."

Around midnight, the *Bayou Blues,* a shrimp boat, docked at the property. It was loaded with approximately 35,000 pounds of marijuana. The fence around the son's home was partially disassembled so a conveyor belt could be used to unload the vessel. Washington could not identify any of the defendants as having been involved in the unloading operation. Butler testified that "one of the Sneeds' sons was working on the fence out there."

Most of the marijuana was trucked away that night, but 1,000 pounds were stored in

---

9. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *accord United States v. Thompson,* 700 F.2d 944, 952 (5th Cir.1983); *United States v. Jackson,* 700 F.2d 181, 185 (5th Cir.1983).

10. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.) (en banc), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); *accord United States v. Shaw,* 701 F.2d 367, 394 (5th Cir.1983); *United States v. Chan-*

*ya,* 700 F.2d 192, 195 (5th Cir.1983); *United States v. Robinson,* 700 F.2d 205, 209 (5th Cir. 1983); *United States v. Gonzalez,* 700 F.2d 196, 203 (5th Cir.1983); *United States v. Brown,* 699 F.2d 704, 710 (5th Cir.1983).

11. *United States v. Dreyfus-de Campos,* 698 F.2d 227, 229 (5th Cir.1983); *accord United States v. Sockwell,* 699 F.2d 213, 215 (5th Cir. 1983).

the son's home. Butler testified that the next day he and Washington returned to "Sneed Sr.'s or Junior's house, the other house" and picked up the remaining cargo. They were met there by a "young kid 18 or 19 years old, dark hair and slim." When asked to identify this person in the courtroom, Washington did not recognize anyone as being the "kid." The record does not provide a physical description of Sneed, Jr. Butler and Washington and "one of the Sneed sons" loaded the marijuana onto their truck.

No witness identified Martin Marion Sneed, Jr. as being involved with the smuggling operation; no witness testified that he possessed marijuana or intended to distribute it. No one testified that Sneed, Jr. was the owner or occupant of the "other house."

The evidence did demonstrate that his father was deeply involved in the scheme, and that Sneed, Jr. was present at the "other" house on the day before the *Bayou Blues* arrived. This evidence, however, is insufficient to convict Sneed, Jr. of implication in the smuggling operation. "[M]ere presence at the scene of a crime or close association with a coconspirator will not support an inference of participation ..." in the criminal activity.[12] The government must show more than that the defendant was in "a climate of activity that reek[ed] of something foul."[13]

■ If the government had proved that Sneed, Jr. owned the house at which the marijuana was stored, this in itself would be sufficient evidence to sustain the conviction. Constructive possession may be proved by showing that the defendant exercised dominion over the premises in which contraband was stored.[14] And Sneed's possession of 1,000 pounds of marijuana would, in itself, provide a reasonable inference that he intended to distribute it.[15] The evidence

failed to show, however, that Martin Sneed, Jr. was the son who occupied that house. Although there was substantial evidence that one of the Sneed sons owned the house, only one bit of testimony suggests that it was Sneed, Jr.: Butler's statement that they returned to "Sneed Sr.'s or Junior's house, the other house," to pick up the last of the marijuana.

Although we recognize that *Glasser* demands that our review accord the government all reasonable inferences, we conclude that no jury could infer beyond a reasonable doubt from this sentence alone that Sneed, Jr. owned or occupied the other house. We, therefore, hold that there was insufficient evidence to sustain a conviction in Martin Sneed, Jr.'s first trial.

For these reasons, the order denying Sneed's "Motion to Dismiss Indictment on Grounds of Double Jeopardy" is RE-VERSED and the case is remanded with instructions to dismiss the indictment.

**12.** *United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982); *accord, United States v. Jackson,* 700 F.2d at 185.

**13.** *United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982) (citations omitted).

**14.** *United States v. Thompson,* 700 F.2d 944, 952 (5th Cir.1983).

**15.** *United States v. Sockwell,* 699 F.2d at 215; *United States v. Borchardt,* 698 F.2d 697, 703 (5th Cir.1983).